## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAI LYMAN

v.

PHILADELPHIA COURT OF COMMON
PLEAS, DOMESTIC RELATIONS
DIVISION, ET AL.

**Civil Action No. 16-5191**

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Kai W. Lyman, *pro se*, ("Plaintiff") hereby respectfully submits the following

opposition to Defendants' Motion and Memorandum of Law in Support of Defendants' Motion

to Dismiss Plaintiff's Complaint ("Def.'s Mem" or "Defendants' Memorandum"), and

respectfully requests, if Defendant's Motion is granted in whole or part, leave to file an

Amended Complaint pursuant Fed. R. P. 15 within twenty-one days. [1]

The Philadelphia Court of Common Pleas, Domestic Relations Division ("Defendants,"

"DRD," or "City"), in startlingly unconstitutional rulings enjoined Plaintiff's only material asset

(his retirement account), refused three separate times to compel Plaintiff to settle separate

litigation regarding his former employer's termination of his employment without cause, and

then imputed the former employer's withdrawn settlement offer as income and ordered

immediate incarceration for indirect civil contempt without the assistance of counsel on October

29, 2014, any express finding of present ability to pay the purge amount, and/or any opportunity

to settle the employment claims to pay the support or otherwise avoid a serious deprivation of

liberty. In contravention of the Due Process Clause and the Sixth Amendment, Defendants did

not offer assistance of counsel, failed to make any contemporaneous finding of a present ability

to pay the purge amount in contravention of the Due Process Clause and the Pennsylvania Rules

---

[1] Plaintiff works two jobs in an effort to provide for his children.

of Civil Procedure, and refused to allow Plaintiff any time to comply even though the Court knew he lacked sufficient assets to comply and that the withdrawn settlement offer. Apparently, another respondent suffered a serious medical event apparently after a separate hearing. Approximately one year after the first enforcement hearing, the Philadelphia Court of Common Pleas, Family Division, ("Family Court") decided Plaintiff's modification petitions and substantially reduced Plaintiff's support, which one of the Defendants' refused to hear evidence on during the enforcement hearing.

Defendants violated the United States Constitution, as well as Pennsylvania law. The Due Process Clause does not permit a State Court to order immediate incarceration, without finding beyond a reasonable doubt of an immediate ability to comply, particularly where Plaintiff's only material asset is enjoined by that same court, which refused to modify that injunction days before the enforcement hearing, the income from which Plaintiff allegedly failed to pay support from was a withdrawn, unpaid litigation settlement was not paid to Plaintiff as of the hearings complained of, and the Family refused to order settlement of independent litigation claims. The State Court's refusal and reluctance to consider Plaintiff's Modification Petitions until one year after the first enforcement hearing—which addressed Plaintiff's apparently reduced earning capacity, the very same issue for which Plaintiff sought recovery from his former employer, were filed months before both enforcement hearings (October 29, 2014 and April 21, 2015), constitutes a Due Process violation. Plaintiff's modification petitions were finally decided by the Court, after Plaintiff proffered an occupational expert, in October of 2015 and made retroactive until October of 2014 (the month of the first enforcement hearing). As that Order recites, it resolved the Modification petitions filed in April of 2014, October of 2014, and January of 2015. Finally, there are numerous instances where information was not docketed, incorrect information was provided and included in the record, or orders were not served until

2

expiry of the appeal period (*e.g.*, the Divorce Decree). Nevertheless, Plaintiff is fully compliant with all obligations arising from the divorce action, and no one alleged any direct contempt at any time. However, the procedural failures in this action are capable of repetition.

The first enforcement order from the Family Court was entered o*n the very day* that Plaintiff filed his responses to his former employer's preliminary objections, which were denied, in the employment litigation regarding the diminution of earning capacity that settled on the first day of trial. (Plaintiff's claims filed before the Pennsylvania Human Relations Commission were also denied by separate order.) Plaintiff's claims against his former employer were the first claims that Plaintiff had ever asserted against any person or entity and required by the refusal of the DRD to acknowledge the reduction in Plaintiff's income caused by the termination of his employment **without cause** as part of his former employer's $2 billion downsizing and public announcement of an anticipated terminations of 5,000 jobs.

Plaintiff, his spouse, and their children remain financially devastated, and Plaintiff's earning capacity substantially impaired, by the Philadelphia Court of Common Pleas 4-year handling of a no-fault divorce. That case began with agreed orders of support and custody and involved the resolution of Plaintiff's only two assets: a marital residence which Plaintiff was required to sell at a loss with the consent of Plaintiff's former spouse, and a partially marital retirement account, after an otherwise successful 15 year legal career that included only two employers in the legal field. Remarkably, the Philadelphia Court of Common Pleas failed to deliver the actual divorce decree to Plaintiff's address of record, a post office box, in a federal post office. Plaintiff has no issue paying support for his children, and this action is to remedy deleterious effects of the recent deprivations of rights, not to avoid payment of adequate support.

3

## BACKGROUND

Plaintiff brings this action for deprivation of federal rights under the color of state law as an action for declaratory and/or injunctive relief pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution, under the law of the Commonwealth of Pennsylvania, and the *Ex Parte Young*, 209 U.S. 123 (1908), doctrine. This action arises from a no-fault divorce involving Plaintiff and Plaintiff's spouse filed in 2012, some two years after the parties' separated, and a support action for child support, alimony, and alimony *pendente lite* (collectively, "support"). The orders of Defendants, officials of the DRD, and the constitutional deprivations set forth therein potentially harm Husband's ability to future earnings to the detriment of himself, his spouse, and their children. Defendants' failures to follow well-established Constitutional requirements of procedural and substantive Due Process, the Sixth Amendment, and the consistent breakdown of Court procedures, including, without limitation, the failure to include in the appellate record the actual support paid by Plaintiff during evidentiary hearings, which the Court underestimated by more than $10,000 dollars during one of the enforcement hearings as set forth in DRD's own audit conducted many months later, and the failure of the Philadelphia Court of Common Pleas to provide a copy of Plaintiff's divorce decree.

The DRD entered a series of support enforcement orders intended to compel support payments from an expired, withdrawn settlement offer that Husband had not received after the DRD previously refused three times to compel Plaintiff's signature of the settlement (November 5, 2013, November 25, 2013, and April 28, 2014) in written orders and transcribed proceedings and after it enjoined Plaintiff from accessing his only material asset to pay that same support and refused to modify the injunction in an apparently undocketed order entered in October of 2014, days before the first indirect civil contempt hearing. Remarkably, despite the indisputable fact

4

that the central issue for determination was the failure to make required support payments and the "present ability" of Plaintiff to make any payments, DRD did not modify its injunction or allow Plaintiff any time to negotiate a settlement to obtain the settlement proceeds imputed as income. *Turner v. Rogers*, 564 U.S. 431 (2011) (Constitution requires express findings regarding the contemnor's ability to comply with the purge order, regardless of whether the contemnor is indigent.) Plaintiff was also deprived of counsel, which he could not afford, when Defendants entered its first order ordering immediate remedies without any stay or suspension. *Turner v. Rogers*, 564 U.S. 431, 442-43 (2011) (holding adversary in a contempt hearing is represented by counsel and the respondent may be deprived of physical liberty, the respondent has a constitutional right to an attorney).

At the time of the first order, Husband had applied to approximately 100 employment opportunities over approximately one year, in excess of the number of applications that required by Pennsylvania case law. At no time did DRD or private counsel for Spouse invoke the provisions of the Pennsylvania Rules of Civil Procedure requiring professional evaluation of earning capacity and it refused to realistically estimate Plaintiff's actual earning capacity until Plaintiff proferred an expert report, at which point the Philadelphia Court of Common Pleas agreed Plaintiff's earning capacity was diminished approximately one year after the first enforcement hearing.

There is no evidence, or even suggestion, of any unreported income from any source. Plaintiff's sworn affidavit, which was not contradicted at the hearing or challenged, showed that Plaintiff possessed approximately $1,500 as compared to the $12,000 purge amount in the first order and approximately $5,000 in the second order and had paid tens of thousands of support to his former spouse. Thus, there is not a shred of evidence that Plaintiff possessed the ability to pay the purge amount on the day of the order, and the Family Court failed to enter any order

5

finding the present ability beyond a reasonable doubt that Plaintiff possessed the ability to pay

the purge amount. Thus, there was not even an allegation that Plaintiff was somehow dilatory in

looking for work. In fact, approximately three months prior to the October 29, 2014 enforcement

hearing, another Judge of the DRD remarked on the record: "I think [Husband] has made

substantial efforts to mitigate in the fact that he is trying to get employment . . . . It's not like he

let things slide. And I think all of us can also recognize that the field for attorneys is not exactly

easy at this point."

There was no evidence—let alone evidence beyond a reasonable doubt—that Husband

had the present ability to pay the $12,000 purge factor in the first order or $5,000 in the second

order. Husband's car was borrowed, he had no real estate assets of any value, his bank

accounts contained approximately $1,500, and his individual retirement account was subject to

an injunction issued by this Court.

The DRD refused to consider Plaintiff's petitions to modify the support order to

conform to the income that Plaintiff actually received. The following timeline explains the

chronology.



*THE PETITIONS TO MODIFY AFTER*
*TEVA'S WITHDRAWAL OF ITS SETTLEMENT OFFER*

## ARGUMENT

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a District Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) – which governs Plaintiffs' allegations does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It requires only that a plaintiff plead sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A court may not dismiss a complaint merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556). The pleading standard requires only that the complaint "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570). The court must deny a motion to dismiss "'if, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief.'" *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 563 n.8).

Plaintiff respectfully submits that this case present colorable claims that survive Defendants' Motion. Defendants violated the Sixth and Fourteenth Amendments. *Turner v. Rogers*, 564 U.S. 431 (2011) (holding that the Sixth Amendment requires that "the Due Process Clause grants an indigent defendant, such as Turner, a right to state-appointed counsel at a civil contempt proceeding, which may lead to his incarceration"). Furthermore, the Constitution requires a Court imposing remedies or incarceration as part of civil contempt proceedings, it

7

must make express findings regarding the contemnor's ability to comply with the purge order, regardless of whether the contemnor is indigent. *Turner v. Rogers*, 564 U.S. 431 (2011). Finally, these claims are authorized under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), and 42 U.S.C. §§ 1983, 1988.

## A. THE DOMESTIC RELATIONS EXCEPTION DOES NOT BAR THIS SUIT FOR VIOLATION OF THE DUE PROCESS CLAUSE AND SIXTH AMENDMENT

Contrary to Defendants' Memorandum, nothing about this case presents any "delicate" issue of domestic relations barring the exercise of federal subject matter jurisdiction. *See* Def.'s Mem., at 2. Nor does the so-called Domestic Relations Exception to federal jurisdiction abrogate the VI and XIV Amendments to the U.S. Constitution or the remedies for Constitutional deprivations under 42 U.S.C. § 1982. Here, Plaintiff is fully compliant with the Family Court's obligations so this litigation is not resolving questions of state family law, but it is capable of repetition and are collateral consequences which Plaintiff may seek to remedy.

This case raises essential questions that the State Courts refused to resolve, including the following:

- failure to provide counsel when plainly required by the authority of *Turner v. Rogers*, 564 U.S. 431 (2011) (holding that the Sixth Amendment requires that "the Due Process Clause grants an indigent defendant, such as Turner, a right to state-appointed counsel at a civil contempt proceeding, which may lead to his incarceration"),

- failing to lift the Family Court's injunction that prevented Plaintiff's compliance with the support order,

- failing to find beyond a reasonable doubt that Plaintiff had the present ability to comply with the purge amount, given Plaintiff's lack of assets, no testimony to the contrary, and the injunction preventing use of Plaintiff's assets to pay support;

- failing to docket certain motions and dispositions, including the petition to modify that was finally decided approximately one-year after the enforcement hearings, and

- failing to serve the divorce decree within the period of time within the time allowed by appeal.

8

Even the cases cited by the City make clear that Plaintiff's claims survive Defendants' Motion to Dismiss. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, ("[o]f course, legal disharmony in family relations is not uncommon, and in many instances that disharmony poses no bar to federal-court adjudication of proper federal questions" and there is no impediment to Plaintiff's asserting his federal constitutional rising from state family law); *McLaughlin v. Pernsley*, 876 F.2d 308, 312 (3d Cir. 1989) ("We recognize that domestic relations matters have traditionally been viewed as a limitation on the diversity jurisdiction of the federal courts. . . . But this action was not brought under the diversity statute."); *Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir. 1984) ("[T]he domestic relations exception does not apply to cases arising under the Constitution or laws of the United States"), *with Magaziner v. Montemuro*, 468 F.2d 782 (3d Cir. 1972) (declining to exercise jurisdiction over a federal civil rights claim). For district court opinions within the Third Circuit, *see Birla v. Birla*, No. 07-1774 (MLC), 2007 WL 3227185, at *2 (D.N.J. Oct. 30, 2007), which applies the exception in a federal-question case; and *Dixon v. Kuhn*, No. 06-4224 (MLC), 2007 WL 128894, at *2 (D.N.J. Jan. 12, 2007). Courts have found no bar where the federal issue was a procedural claim having scant connection to the substance of the underlying alimony dispute. Even if Congress or the courts could carve out a domestic-relations exception to diversity jurisdiction, "the Constitution forbids such an exception to the mandatory federal-question jurisdiction it vests in the federal courts." Bradley D. Silverman, Federal Questions & the Domestic Relations Exception, 125: 5 Yale L. Journal, 1150 (March 2016); *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) (jurisdiction existed under 28 U.S.C. § 1332).

The City of Philadelphia's reliance on the unreported case of *Burkovinsky v. Penn.*, 2011 U.S. Dist. LEXIS 112402, *8, is misplaced. Indeed, a claim for injunctive relief against the judicial officers would be barred by the language of § 1983, and *Bukovinsky* has not alleged that

9

a declaratory decree was violated or that declaratory relief was unavailable. *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam) (noting that § 1983 provides that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."). Here, Plaintiff merely pleads the remedy in the alternative and given the sustained deprivations of well-established Due Process Clause rights in the conduct of various judicial proceedings, the remedies requested are necessary to ameliorate the Constitutional violations. A declaration is sufficient and the conduct of the Court complained of is capable of repetition yet evading review because of the likely remedies, rendering entry of an injunction proper. Further, despite the fact that Plaintiff is fully compliant, and has been since his former employer, paid its settlement proceeds, with all existing family court obligations, the Court's entry of the enforcement orders has adverse collateral economic consequences that should immediately remedies for the benefit of Plaintiff, his former spouse, and their Children.[2]

The Eleventh Amendment does not bar federal courts from entertaining suits against states. First, suit is permitted where a state has waived its immunity, a circumstance not present with the Commonwealth of Pennsylvania. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985). Second, Congress may validly abrogate sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment. Seminole Tribe, 517 U.S. at 57-73, 116 S. Ct. 1114. Third, Eleventh Amendment immunity is inapplicable where the plaintiff sues state officials in their official capacities seeking only prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). These exceptions plainly apply here.

---

[2] Plaintiff's claims are not an attempt to relitigate the amount of support (the DRD having already remedied its prior orders, albeit more than one year after the first enforcement order) or to change custody, both issues having been agreed to in 2013 (first support order), 2014 (custody), and 2016 (amended support order). Thus, this litigation relates only to the Due Process Clause and VI Amendment violations in the context of state court

## B. DEFENDANTS' CONSTITUTIONAL VIOLATIONS ARE CAPABLE OF REPETITION AND SHOULD BE REMEDIED BY THIS COURT

Plaintiffs' claims are not barred by the *Rooker-Feldman* doctrine. In *Exxon Mobil Corp v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284, the United States Supreme Court described the *Rooker-Feldman* doctrine as preventing the lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced."

The *Rooker-Feldman* doctrine takes its name from the two cases in which the United States Supreme Court applied the rule to find that a Federal District Court lacked jurisdiction. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Since *Feldman* was decided, the United States Supreme Court has "tended to emphasize the narrowness of the *Rooker-Feldman* rule." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (collecting cases). In *Exxon Mobil*, the United States Supreme Court "warned that the lower courts have at times extended *Rooker- Feldman* far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state comis." *Lance*, 546 U.S. 459, 464 (quoting *Exxon Mobil*, 544 U.S. at 283).

In *Great Western Mining and Mineral Company v. Fox Rothschild, LLP,* 615 F.3d 159 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit, citing *Lance* and *Exxon Mobil*, held that the *Rooker-Feldman* doctrine did not deprive the Federal District Court of jurisdiction to hear a § 1983 claim by a plaintiff alleging that its state-court losses were the result of a conspiracy between the named defendants and certain

proceedings.

members of the Pennsylvania state judiciary to exchange favorable rulings for future employment as arbitrators. Analyzing the holding of *Exxon Mobil*, the Third Circuit concluded that there are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s]" of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining,* 615 F.3d at 166.

The Third Circuit also recognized that this "seemingly straightforward" test becomes more complicated when a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding especially when the federal plaintiff is alleging "independent claims" over which federal courts have jurisdiction. *Id.* at 167-68. Applying *Lance, Exxon-Mobil* and *Great Western Mining* to this case requires this Court to deny Defendants' Motion to Dismiss.[3] Here, DRD's failure to appoint counsel, or obtain a voluntary and knowing waiver of counsel, is a constitutional deprivation, as are its failures to make requisite findings of the present ability to comply with purge amount with no time to comply before imposition of the remedy, to determine (or hear evidence) on Plaintiff's Petitions to Modify the Support Order (the first of which was filed more than 6 months before the first enforcement order), and/or to lift or modify the very injunction on Plaintiff's only material asset that prevented his compliance with the Order. Furthemore, Plaintiff is not asking this Court to recast the financial or economic terms of the divorce or support orders, but rather to vindicate important procedural and substantive constitutional rights. Finally, if this Court flatly refuses to hear constitutional deprivations arising from Family

---

[3] The cases cited by Defendants provide no support for their contentions. For example, *Marran v. Marran*, 376 F3d 143 (3rd Cir. 2009) and most of the other cases cited by Defendants, Defs.' Mem. at 5, involved a custody dispute, not an issue here. The parties to the divorce action giving rise to the instant litigation, agreed to a custody Order early in the litigation while the Philadelphia Court of Common Pleas took

12

Court matters, Plaintiff and other families stand to repeatedly deprived of these important and fundamental constitutional rights.

## C.   THE ELEVENTH AMENDMENT AND PENNSYLVANIA LAW DOES NOT BAR INJUNCTIVE OR DECLARATORY RELIEF FOR STATE ACTOR VIOLATIONS OF THE U.S. CONSTITUTION

In a remarkably overbroad contention, Defendants in their haste to avoid a fair and impartial hearing of the Constitutional deprivations at issue in this litigation argue that the Eleventh Amendment and Pennsylvania state law bars any suit or remedies for deprivation of U.S. Constitutional rights by its judicial officers. Defs.' Mem., at *5-6. The only contention of Defendants with which Plaintiff agree is that Pennsylvania has not waived its Eleventh Amendment immunity against personal damage actions. *Id.*, at 7.

Here, Plaintiff merely pleads the remedy in the alternative and given the sustained deprivations of well-established Due Process Clause rights in the conduct of various judicial proceedings, the remedies requested are necessary to ameliorate the Constitutional violations. A declaration is sufficient and the conduct of the Court complained of is capable of repetition yet evading review because of the likely remedies, rendering entry of an injunction proper. Further, despite the fact that Plaintiff is fully compliant, and has been since his former employer, paid its settlement proceeds, with all existing family court obligations, the Court's entry of the enforcement orders has adverse collateral economic consequences that should immediately remedies for the benefit of Plaintiff, his former spouse, and their Children.

The Eleventh Amendment does not bar federal courts from entertaining suits against states. First, suit is permitted where a state has waived its immunity, a

four years to resolve the no fault divorce involving one asset (and a marital residence sold at a loss).

circumstance not present with the Commonwealth of Pennsylvania. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985). Second, Congress may validly abrogate sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment. *Seminole Tribe*, 517 U.S. at 57-73, 116 S. Ct. 1114. Third, Eleventh Amendment immunity is inapplicable where the plaintiff sues state officials in their official capacities seeking only prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). These exceptions plainly apply here.

## D. DEFENDANTS ARE SUBJECT TO SUIT AS "PERSONS" UNDER SECTION 1983 FOR CONSTITUTIONAL VIOLATIONS

In Defendants' Memorandum, they contend that the real party in interest is the government entity in which the individual officers serve and were sued in their official and personal capacities. *See* Defs. Mem., at 7. However, as set forth above judicial officers are subject to declaratory and injunctive relief even if they are absolutely immune from claims for money damages. A state is not a person subject to suit under section 1983, but a state officer can be sued in his official capacity for prospective or injunctive relief despite the fact that a suit against a government official in his official capacity represents nothing more than a suit against the government entity itself. *Ex Parte Young*, 209 U.S. 123 (1908); *see also Hafer v. Melo*, 502 U.S. 25, 31 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 701 (1978). Although a state may not be sued for damages, it may be sued for declaratory or injunctive relief, as may municipalities, local governments, and each of their officials. *Hafer v. Melo*, 502 U.S. 25 (1991); *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

14

For these reasons, the City's reliance on cases involving money damages claims against

the state or its political subdivisions whether under the Section 1983 requirement of "person"

or Eleventh Amendment Immunity in federal court are misplaced. Defs.' Mem., at *7 (citing

*Callahan v. City of Philadelphia*, 207 F.3d 668, 669-70 (3rd Cir. 2000) (discussing

insurmountable hurdles for money damage claims against state entities under the Section 1983

definition of persons and Eleventh Amendment immunity); *Will v. Michigan Department of

State Police*, 491 U.S. 58, 109 S.Ct. 2304 (money damages against state entity)); *see Scott v.

Plante*, 641 F.2d 117, 133 (3rd Cir. 1981) ("The defendants also contend that as a matter of law

they were entitled to judgment notwithstanding the verdict by virtue of the Eleventh

Amendment, since they were acting in official capacities as state officers. That contention is

frivolous. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Osborn v. Bank of

the United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824)). "[T]o establish personal

liability in a § 1983 action, [plaintiff must] show that the official, acting under color of state

law, caused the deprivation of a federal right." *Id.* at 167 (emphasis in original). "More

particularly, the plaintiff must allege that the defendant was personally involved in the

deprivation." *Johnson v. Derose*, 349 F. Appx. 679, 681 (3d Cir. 2009).

## E.    ABSOLUTE JUDICIAL IMMUNITY DOES NOT APPLY TO SUITS TO
## REMEDY JUDICIAL VIOLATIONS OF THE U.S. CONSTITUTION.

Judicial Immunity, the Eleventh Amendment, or principles of abstention deprive this

Court of the ability to remedy DRD violation of Plaintiff's Constitutional rights. Plaintiff's

Section 1983 claims for declaratory relief and injunctive relief that have been asserted against

Defendants, in her official capacity, are not barred. *See Ex parte Young*, 209 U.S. 123(1908);

*see also Mo. Child Care Assn. v. Cross*, 294 F.3d 1034 (8th Cir.2002); *Scott v. Plante*, 641 F.2d

117 (3RD Cir. 1981). The proper focus is "directed at whether the injunctive relief sought is

15

prospective or retroactive in nature, and not on an injunction's impact on the State's treasury."

*Id.* (quoting *Antrican ex rel. Antrican v. Odom*, 290 F.3d 178, 186 (4t h Cir. 2002) (internal quotation marks omitted)).

## F. DECLARATORY AND INJUNCTIVE RELIEF IS PROPER TO REMEDY OF THE DEFENDANTS' VIOLATIONS OF THE U.S. CONSTITUTION, THE DUE PROCESS CLAUSE, & THE SIXTH AMENDMENT

Lastly, DRD asserts a welter of procedural objections to why Plaintiff should not be permitted to seek redress of the obvious constitutional deprivations. Defs.' Mem., at 9-14. First, declaratory relief is available to declare the violation of rights, the necessity of following well-established precedent regarding appointment of counsel, finding of present ability to pay purge amounts, and otherwise comply with the Sixth Amendment and Due Process Clause of the U.S. Constitution. Thus, Plaintiff does request that the Court declare that, for example, Sixth Amendment procedures are following in any follow on procedures and that the DRD comply with the requirement of findings consistent with the present ability to comply with the purge amount, among other things. Second, as set forth in response to Defendant's previous arguments, The Federal Courts Improvement Act of 1996 amended Section 1983 to provide that an injunction cannot be granted unless declaratory relief is unavailable. Thus, if Defendant is correct that declaration is not available, Plaintiff is entitled, particularly at this stage of the proceeding, to maintain an alternative claim for injunctive relief, particularly where DRD's conduct is capable of repetition yet evading review because the time to seek appellate relief would exceed likely penalty under state law. Third, Section 1983 is intended to provide powerful remedies for state and local violation of U.S. constitutional rithgts, including the Due Process Clause and the sixth Amendment. This action seeks precisely the type of remedies authorized by *Ex Parte Young* and *Turner v. Rogers*.

16

DRD tries to assert arguments that were squarely rejected by the Supreme Court in

*Turner v. Rogers*, 564 U.S. 431 (2011). The Court explained:

> Respondents argue that this case is moot. *See Massachusetts v. Mellon*, 262 U. S. 447, 480 (1923) (Article III judicial power extends only to actual "cases" and "contro-versies"); *Alvarez v. Smith*, 558 U. S. __, __ (2009) (slip op., at 4) ("An actual controversy must be extant at all stages of review" (internal quotation marks omitted)). They point out that *Turner* completed his 12-month prison sentence in 2009. And they add that there are no "collateral consequences" of that particular contempt determination that might keep the dispute alive. *Compare Sibron v. New York*, 392 U. S. 40, 55–56 (1968) (release from prison does not moot a criminal case because "collateral consequences" are presumed to continue), *with Spencer v. Kemna*, 523 U. S. 1, 14 (1998) (declining to extend the presumption to parole revocation).

The Supreme Court held it falls within a special category of disputes that are "capable of

repetition" while "evading review." *Id.* (citing *First Nat. Bank of Boston v. Bellotti*, 435 U. S.

765, 774 (1978) (internal quotation marks omitted) (18-month period too short); S*outhern*

*Pacific Terminal Co.*, *supra*, at 514–516 (2-year period too short)). The actions were capable of

repetition in Turner because, as in this casem, he (and Plaintiff) here remain before DRD , which

can enforce support orders at any time.

Given the importance of the interest at stake, it is obviously important to assure accurate

decision making in respect to the key "ability to pay" question. Moreover, the fact that ability to

comply marks a dividing line between civil and criminal contempt, *Hicks*, 485 U. S., at 635, n. 7.

As the Supreme Court explained in *Turner*, they can do so, moreover, without incurring some of

the drawbacks inherent in recognizing an automatic right to counsel. Those safeguards include an

express finding by the court that the defendant has the ability to pay and a fair opportunity to

present defense. In particular, that Clause does not require the provision of counsel where the

opposing parent or other custodian (to whom support funds are owed) is not represented by

counsel and the State provides alternative procedural safeguards equivalent to those we have

mentioned (adequate notice of the importance of ability to pay, fair opportunity to present, and to

17

dispute, relevant in-formation, and court findings). Here, Plaintiff was clearly indigent in light of the assets on hand and counsel for Plaintiff's former spouse was represented by private counsel, triggering the Due Process and Sixth Amendment requirements of counsel.

In addition to the preceding arguments, the Philadelphia Court made no findings as to "present ability" to pay as is obvious from the Order, it provided no counsel even while it allowed private and experienced counsel to argue that the Philadelphia Court's injunction should remain against Plaintiff's only asset—which he had used during that year to make support payments—and refused to allow Plaintiff any time to actually obtain the settlement proceeds that the Court had imputed (or pretended) that Plaintiff had received in calculating the amount that Plaintiff should pay his spouse. Remarkably, once Plaintiff received those settlement proceeds, the portion payable to his spouse was promptly paid without any acrimony or further proceedings for enforcement. The Philadelphia Court of Common Pleas violated the United States Constitution

As in Turner, DRD made no finding as to the ability to pay the purge amount and left no time for Plaintiff to raise the money. The requirements of the Rule are clear and the reasoning expressly consistent with the U.S. Consitution:

> The court shall make a finding, on the record, as to whether the respondent, based upon the evidence presented at hearing, does or does not have the present ability to pay the court-ordered amount of support.

Pa. R. Civ. P. 1910.25-5(b). That DRD violated Constitutional requirements is clear from the explanatory note of the Pennsylvania Rules of Civil Procedure:

> In that case, the Court held that counsel need not automatically be appointed for indigent support obligors facing incarceration in civil contempt proceedings. The Court held that the due process clause of the Fourteenth Amendment to the U.S. Constitution does not require that counsel be provided where the obligee is not represented by counsel and the state provides alternative procedural safeguards including adequate notice of the importance of the ability to pay, a fair opportunity to present, and to dispute, relevant information, and express court findings as to the obligor's ability to pay.

18

Pa. R. Civ. P. 1910.25 Explanatory Comment—2012.

Accordingly, Plaintiffs' allegations that they were denied procedural due process,
including the right to an impartial tribunal, the right to counsel, and the right to a knowing and
intelligent guilty plea, are sufficient to survive a motion to dismiss. *See Care Carey v. Piphus*,
435 U.S. 247, 266 (1978).

## 1. Declaratory Relief Is a Proper Remedy of Defendants' Violations

Under the Declaratory Judgment Act, given the existence of "a case of actual controversy
within its jurisdiction," a federal court "may declare the rights and other legal relations of any
interested party seeking such declaration." Declaratory relief is available even when an adequate
remedy at law exists. A declaratory judgment rules on the lawfulness of the policy or conduct
challenged by the plaintiff, but, unlike injunctive relief, does not require that the court become
engaged in intrusive oversight of governmental activity. Unlike, the non-precedential decision
*Corliss v. O'Brien,* 200 Fed. Appx. 80, 84-85 (3rd Cir. 2006), where the Third Circuit held that
declaratory judgments were not simply to find liability, Plaintiff here asserts that the deprivations
could occur over and over as DRD continues to maintain enforcement authority for support
orders. Thus, DRD could refuse to provide counsel for Plaintiff if he cannot pay his support
(which he would, of course, pay first before hiring private counsel), refuse to hear prior filed
Modification Petitions, and/or make express findings of his present ability to meet the purge
amount set by DRD.

Thus, even the cases cited by Defendants make clear the availability of a declaration
pursuant to 28 U.S.C. § 2201. The full passage of another case cited by Defendants is described
as follows:

> A declaratory judgment is inappropriate solely to adjudicate past conduct. *Crown
> Cork & Seal Co., Inc. v. Borden, Inc.*, 779 F.Supp. 33, 35 (E.D.Pa. 1991). "The
> real value of the judicial pronouncement — what makes it a proper judicial
> resolution of a `case or controversy' rather than an advisory opinion — is in the

19

settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 203, 102 L.Ed.2d 1 (1988) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672 2676, 96 L.Ed.2d 654 (1987)) (emphasis in original).

*Gruntal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993). This is particularly true where the potential deprivation is sufficiently definite to occur again because support payments are required until the children reach adulthood.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, given the existence of "a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." Declaratory relief is available even when an adequate remedy at law exists. A declaratory judgment rules on the lawfulness of the policy or conduct challenged by the plaintiff, but, unlike injunctive relief, does not require that the court become engaged in intrusive oversight of governmental activity. *O'Shea v. Littleton*, 414 U.S. 488 (1974); *Rizzo v. Goode*, 423 U.S. 362 (1976).

## 2. The Federal Courts Improvement Act Does Not Bar Plaintiffs' Claims for Injunctive Relief

Second, the Federal Courts Improvement Act of 1996 amendments to Section 1983 simply provide that injunctive relief is not available unless there is some bar to declaratory relief (or violation of an existing declaration, which to Plaintiff's knowledge is not the case. Thus, it is not appropriate given the existence of declaratory judgment or injunctive relief to decide on a motion to dismiss this issue, when it is obvious that DRD could continue to violate the Due Process Clause of the Fourteenth Amendment, the Sixth Amendment. See 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable"). Again, even one of the leading cases cited by DRD explains that injunctive relief if not available unless there is no availability of declaratory judgment.

20

Thus, Plaintiff assets that should the Court bar declaratory relief, which is should not, the injunctive claim should remain until disposition of the case on the merits. Because plaintiff in that case "has not alleged that . . . declaratory relief is unavailable . . . his claim for injunctive relief is barred. *Azubuko v. Royal*, 443 F.3d 302, 304 (3rd Cir., 2006). Here, if the Court were to incorrectly hold that declaratory relief is unavailable, it must preserve the availability of the injunction by the plain terms of the case.

### 3. Plaintiff's Claims Are Legally Cognizable Claims Under Section 1983 for Deprivation of Constitutional Rights

For the reasons discussed, both the plain language of 42 U.S.C. §§ 1983 and 1988, as well as the Ex Parte Young doctrine permit, this Court to enforce the Consitutional protections of the Due Process Clause and the Sixth Amendment. Contrary to the argument advanced by Defendants', Plaintiff did not seek a mandamus so that the terms of 28 U.S.C. § 1361 and Fed. R. Civ. P. 81(b) are not relevant to the motion to dismiss. Again, to reiterate, it is the collateral consequences of the order and the likelihood of repetition without future pre-deprivation remedies that render this action necessary.

### G. Plaintiff's Complaint States Cognizable Claims for Constitutional Deprivations

Plaintiff's claims are cognizable under well-established case law. In Turner v. Rogers, 564 U.S. 431, 442-43 (2011), the Supreme Court held that where the adversary in a contempt hearing is represented by counsel and the respondent may be deprived of physical liberty, the respondent has a constitutional right to an attorney. The Turner holding is clear:

> We consequently hold that the Due Process Clause does not automatically require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year). In particular, that Clause *does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is **not** represented by counsel **and** the State provides alternative procedural safeguards equivalent to those we have mentioned (adequate notice of the*

21

*importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings).*

*Id.* (emphasis supplied). Defendants violated the Due Process Clause because at both hearings Plaintiff's former spouse was represented by counsel and Plaintiff did not have counsel during the first hearing, which lead to immediate imposition of incarceration. During both hearings, Defendants refused to make findings on the express ability to pay, which Plaintiff lacked as all of his income was fully garnished and Defendants refused to lift the injunction against Plaintiff's only asset from which to pay the support.

The Turner Court specifically found that the failure to provide counsel and make findings as to the present ability to pay the ordered support constituted a violation of the Due Process Clause and the Sixth Amendment. *Augustin v. City of Phila.*, Case No. 2:14-cv-04238 (E.D. Pa. March 17, 2016), *7-9 (granting summary judgment in part for Section 1983 plaintiff and relying on *Turner* and other cases); *Ex Parte Walker*, 748 S.W.2d 21 (Tex. App. 1988) (reversing for failure to appoint counsel and to hear evidence regarding inability to pay support amounts,); *Cleveland v. City of Montgomery*, 2014 WL 6461900; 2014 U.S. Dist. LEXIS 160679 (M.D. Ala., November 17, 2014) (analyzing *Turner* and *Bearden v. Georgia*, 461 U.S. 660 (1983)); *McNabb v. Osmundson*, 315 N.W.2d 9, 11, 12 (Iowa 1982) (due process of law requires right to be represented by counsel (citation omitted)); *Scott v. Illinois*, 440 U.S. 367, 370-374, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (the Supreme Court clarified that the right to counsel applies when a person is actually sentenced to imprisonment). Here, the Court ordered immediate incarceration and granted Plaintiff no opportunity to obtain a settlement from his former employer for the settlement income that DRD had already imputed to him. Thus, while it was alleged in this case that husband had diverted some of the monies, Plaintiff here was ordered to incarceration for a settlement payment he had indisputably never received (and an injunction from this Court prevented him from using his only asset to pay the support) *See*

*Rodriguez v. Robbins*, 804 F.3d 1060, 1075-76 (9th Cir. 2015); *Tate v. Short*, 401 U.S. 395, 91

S.Ct. 668, 28 L.Ed.2d 130 (1971) (holding that a state "cannot, consistently with the Constitution

limit the punishment to payment of the fine if one is able to pay it, yet convert the fine into a

prison term for an indigent defendant without the means to pay his fine"); *Frazier v. Jordan*, 457

F.2d 726, 728 (5th Cir.1972); *See also Bearden v. Georgia*, 461 U.S. 660, 667–68, 103 S.Ct.

2064, 76 L.Ed.2d 221 (1983); *Alkire v. Irving*, 330 F.3d 802, 816–17 (6th Cir.2003) (holding that

"if the individual was simply unable to pay, that is, he was indigent, the court is required to

consider alternative measures of punishment"). Remarkably, these principles of required

findings, which were not followed, are also set forth in Pennsylvania law. *Barrett v. Barrett*,

470 Pa. at 253, 264 (Pa. 1977); *Hyle v. Hyle*, 868 A.2d 601, 604-5 (Pa. Super. 2005) (the Court

must be convinced beyond a reasonable doubt that the alleged contemnor has the present ability

to comply with the order; *Orfield v. Weindel*, 52 A.3d 275 (Pa. Super. 2012) (same); *Warmkessel

v. Heffner*, 17 A.3d 408, 415 (Pa. Super. 2011) (quoting *Childress v. Bogosian*, 12 A.3d 448, 465

(Pa. Super. 2011) (same)); *see also Haley v. Haley*, 549 A.2d 1316 (Pa. 1988).

\*       \*       \*

For the reasons set for above, Defendants' Motion to Dismiss should be denied in its

entirety, and, in the alternative, Plaintiff respectfully requests leave to file an amended complaint

with additional facts for events occurring after the initial orders and other causes of action.

Respectfully Submitted,

Kai W. Lyman, Esq.
P.O. Box 312
Bryn Mawr, PA 19010
215-480-7987

January 31, 2017

23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 31, 2017, I personally caused to be served upon the following a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Motion to Extend the Deadline to Oppose Defendants' Motion to Dismiss by email to legaldepartment@pacourts.us, and, on January 31, 2017, by mail to Martha Gale, Esq., Administrative Office of PA Courts, 1515 Market Street, Suite 1414, Philadelphia, PA 19102.

Kai W. Lyman, pro se
P.O. Box 312
Bryn Mawr, PA 19010
215-480-7987