IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KAI LYMAN | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 16-5191 |
| PHILADELPHIA COURT OF COMMON PLEAS, et al. | : | |

<u>MEMORANDUM</u>

**Juan R. Sánchez, J.**                                                                 June 29, 2017

Plaintiff Kai Lyman brings this 42 U.S.C. § 1983 action against the Domestic Relations Division of the Philadelphia Court of Common Pleas and two Common Pleas Court judges—the Honorable Margaret T. Murphy and the Honorable Anne Marie B. Coyle—for alleged violations of his constitutional rights in connection with his state court divorce and child support cases. Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), respectively. Because this Court is barred from considering Lyman's claims based on the *Rooker-Feldman* doctrine, *Younger* abstention, the Eleventh Amendment, and/or judicial immunity, the motion to dismiss will be granted and Lyman's Complaint will be dismissed in its entirety.

**BACKGROUND**[1]

In 2012, Lyman and his ex-wife instituted a no-fault divorce proceeding and a support action for child support and alimony in the Philadelphia Court of Common Pleas, Domestic Relations Division (DRD). The proceedings were assigned to Judge Coyle, who entered support orders with which Lyman alleges he was unable to comply. Lyman's claims in this action arise

---

[1] Except where otherwise specifically noted, the following facts are drawn from Lyman's Complaint, the allegations of which the Court accepts as true for purposes of deciding the instant motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding a court considering a Rule 12(b)(6) motion to dismiss should "assume the[] veracity" of the complaint's "well-pleaded factual allegations").

out of enforcement orders issued by Judge Coyle on October 29, 2014, and April 21, 2015, compelling Lyman to make support payments of $12,000 and $5,000 pursuant to existing support orders.[2] Although Judge Coyle entered both of the enforcement orders after holding a hearing, she did so without hearing evidence or making a finding as to Lyman's present ability to pay the required amounts, and without lifting or modifying a previously issued injunction preventing Lyman from accessing funds from his retirement account—his "only material asset." Pl.'s Resp. 5-6, 12. Instead, Judge Coyle based the payment amounts on an expired and withdrawn settlement offer from Lyman's former employer, which Lyman had never accepted. The enforcement orders thus did not accurately reflect Lyman's reduced earning capacity, and Lyman was unable to pay the amounts ordered. The court also entered the orders without first ruling on Lyman's petitions to modify the support order.[3]

Following the October 29, 2014, hearing, at which counsel was not appointed for Lyman, Judge Coyle ordered Lyman immediately incarcerated for indirect civil contempt, based on his inability to make the $12,000 support payment.[4] At the time, Lyman had only $1,500 in his bank account. The following day, however, a family member provided the $12,000, and Lyman

---

[2] Lyman provides no facts concerning Judge Murphy beyond stating at the February 28, 2017, oral argument that Judge Murphy is an administrative judge who "funneled" the orders.

[3] Lyman filed his initial modification petition on April 14, 2014, more than six months before the first enforcement order was entered, and filed additional modification petitions in October 2014 and January 2015.

[4] Lyman alleges Judge Coyle's contempt sanction violated Pennsylvania Rule of Civil Procedure 1910.25-5, which provides in relevant part:
> (a) No respondent may be incarcerated as a sanction for contempt without an evidentiary hearing before a judge.
> (b) The court shall make a finding, on the record, as to whether the respondent, based upon the evidence presented at the hearing, does or does not have the present ability to pay the court-ordered amount of support.

2

was released. Judge Coyle held the second enforcement hearing on April 21, 2015, and on April 24, 2015, a family member again paid the ordered amount of $5,000.

On October 7, 2015, approximately a year and a half after Lyman filed his first modification petition and one year after the first enforcement hearing, the DRD retroactively granted Lyman's modification petitions, reducing his support payments so as to conform to his income and ability to pay, and reducing his arrears as of October 2014.

On June 29, 2016, the DRD issued a decree approving a no-fault divorce between Lyman and his ex-wife and resolving his ex-wife's outstanding alimony claims. Lyman, however, did not receive a copy of the divorce decree until a day after the appeal period expired, when counsel for his ex-wife provided him with a copy.[5] In addition, during the course of the underlying state court proceedings, the DRD failed to docket certain information and included incorrect information in the record.[6]

Lyman claims that in the instant § 1983 action he seeks only to remedy the Defendants' violations of his constitutional rights, not to relitigate any custody or support issues. He alleges Defendants failed to afford him due process of law by failing to (1) provide him counsel for his civil contempt proceeding[7]; (2) lift the DRD's injunction on his retirement account, which

---

[5] Lyman indicates that because he did not receive the June 29, 2016, divorce decree until one day after the appeal period expired, he has filed for permission to appeal *nunc pro tunc*. Compl. ¶ 26.

[6] By way of explanation, Lyman states only that the court failed to docket his modification petition. *See* Pl.'s Resp. 8.

[7] Lyman argues he should have been appointed counsel pursuant to *Turner v. Rogers*, 564 U.S. 431 (2011), in which the United States Supreme Court held that, in some instances, counsel should be appointed for an indigent party in civil contempt proceedings. The *Turner* Court held, however, that the Due Process Clause does not automatically require the provision of counsel at civil contempt proceedings to an indigent individual subject to a child support order, "even if that individual faces incarceration," particularly when the opposing parent is not represented by counsel and the state provides alternative procedural safeguards, such as "adequate notice of the

prevented him from complying with the support orders; (3) find beyond a reasonable doubt that Lyman had the ability to comply with the enforcement orders before holding him contempt, in violation of the Pennsylvania Rules of Civil Procedure; (4) docket certain motions and dispositions; and (5) serve the divorce decree on him within the time allowed for appeal. Lyman seeks damages, declaratory relief, and an injunction under 42 U.S.C. § 1983 to remedy the violations of his constitutional rights, including (1) a declaration that Defendants' conduct violated his federal and state constitutional rights; (2) an injunction requiring Defendants to deliver "any information arising from the Orders complained of" to Lyman and delete such information from their records; and (3) an injunction preventing Defendants from engaging in future conduct that would violate Lyman's constitutional rights. Defendants have filed a motion to dismiss, arguing the Domestic Relations Exception, the *Rooker-Feldman* doctrine, *Younger* abstention, the Eleventh Amendment, and/or the doctrine of judicial immunity bar consideration of the merits of Lyman's claims.

**DISCUSSION**

In considering a Rule 12(b)(1) motion, the court may treat the motion "as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Where the motion is a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* Thus, in evaluating a facial attack, the court

---

importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings." 564 U.S. at 448; *see also* Pa. R. Civ. P. No. 1910.25, Explanatory Note (noting the Rule had been amended to comport with *Turner*). Lyman has indicated that his ex-wife was represented by counsel at the October 29, 2014, hearing, and he contends that he was not provided a fair opportunity to present evidence regarding his ability to pay and the court failed to make express findings as to his ability to pay, as required under *Turner*.

"applies the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Defendants appear to bring a facial challenge to the Court's subject matter jurisdiction in this case, as they rely solely on the allegations in Lyman's Complaint.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "is not akin to a 'probability requirement,'" the complaint must support "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). A complaint which "pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In evaluating a complaint's sufficiency under these standards, a court must first "tak[e] note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675). Next, the court should "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where there are well pleaded allegations, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### A. Domestic Relations Exception to Federal Jurisdiction

Defendants first argue Lyman's claims are barred by the domestic relations exception to federal jurisdiction. The domestic relations exception is narrow, "encompass[ing] only cases involving the issuance of a divorce, alimony, or child custody decree." *Matusow v. Trans–County Title Agency, LLC,* 545 F.3d 241, 242 (3d Cir. 2008) (quoting *Ankenbrandt v. Richards,* 504 U.S. 689, 704 (1992)). Further, the domestic relations exception applies only as "a limitation on the diversity jurisdiction of the federal courts," and "does not apply to cases arising under the Constitution or laws of the United States." *McLaughlin v. Pernsley*, 876 F.2d 308, 312 (3d Cir. 1989); *see Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir. 1984) ("[A]s a jurisdictional bar, the domestic relations exception does not apply to cases arising under the Constitution or laws of the United States.").

Because Lyman brings claims under § 1983, alleging procedural violations in state court that raise constitutional issues, and does not seek the issuance or modification of a decree relating to divorce, alimony, or child custody, the domestic relations exception is inapplicable. *See Wattie-Bey v. Att'y Gen.'s Office*, 424 F. App'x 95, 96 n.1 (3d Cir. 2011) (holding the complaint, which "invoke[d] federal question, not diversity, jurisdiction in seeking relief under § 1983," was not subject to dismissal under the domestic relations exception).

### B. Rooker-Feldman Doctrine and Younger Abstention

Defendants next argue Lyman's claims are barred by the *Rooker-Feldman* doctrine, as he improperly seeks redress for injuries that resulted from adjudicative orders of the Pennsylvania courts. Defendants also argue this Court should abstain from deciding Lyman's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).

"The *Rooker–Feldman* doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004); *see Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (noting a losing party in state court may not seek "what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights"). In other words, the doctrine precludes "lower federal court jurisdiction over claims that were actually litigated or those inextricably intertwined with adjudication by a state court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006) (internal quotation marks omitted). A federal claim is "inextricably intertwined with a state adjudication" for purposes of the *Rooker-Feldman* doctrine where "federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* (internal quotation marks omitted); *see also McAllister v. Allegheny Cty. Fam. Div.*, 128 F. App'x 901, 902 (3d Cir. 2005) ("*Rooker-Feldman* does not allow a [party] to seek relief that, if granted, would prevent a state court from enforcing its orders."). "When, however, a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010).

Under *Younger*, "federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." *Miller v. Mitchell*, 598 F.3d 129, 145 (3d Cir. 2010); *see also Anthony v. Council*, 316 F.3d 412, 418 (3d Cir. 2003) ("*Younger* has been applied to civil enforcement proceedings and to other civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." (internal quotation marks omitted)). To

establish that *Younger* abstention is warranted, a party must show "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Marran*, 376 F.3d at 154 (internal quotation marks omitted).

The Third Circuit has held that federal claims arising out of state child custody proceedings may implicate both the *Rooker-Feldman* doctrine and *Younger* abstention. *See Marran*, 376 F.3d at 151 (applying *Rooker-Feldman* doctrine to plaintiff's claims stemming from child custody orders because, "[e]ven assuming that it is true that no modification of the custody order would occur because of an injunction or an award of damages, granting an injunction or award of damages against [defendant] would require this Court to find that the Court of Common Pleas erred in finding that the abuse allegations were unfounded"); *Anthony*, 316 F.3d at 420 (declining to decide plaintiffs' § 1983 claims stemming from their contempt hearings in state child custody proceedings pursuant to *Younger* abstention); *Ludwig v. Berks Cty.*, 313 F. App'x 479, 481 (3d Cir. 2008) (affirming district court's dismissal, under *Rooker-Feldman* doctrine, of plaintiff's due process claims against state court judge); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 624 (E.D. Pa. 2014) (applying *Younger* abstention to plaintiff's constitutional claims relating to state court custody proceedings because "Third Circuit case law does not explicitly state that *Rooker-Feldman*, rather than *Younger* abstention, must apply to child custody proceedings"), *aff'd*, 572 F. App'x 68 (3d Cir. 2014). Because the Third Circuit has not found the two doctrines mutually exclusive, and has applied each in the context of an action asserting constitutional claims concerning state child custody proceedings, the Court will evaluate Lyman's claims under

both doctrines.[8] *See Anthony*, 316 F.3d at 420 n.10 (declining to address whether *Rooker-Feldman* doctrine applied because abstention was proper under *Younger*).

To the extent Lyman seeks relief from injuries caused by the DRD's enforcement orders, including his incarceration following the October 2014 hearing, his claims are barred by the *Rooker-Feldman* doctrine. *See Ludwig*, 313 F. App'x at 481 (holding that "[a]lthough raised as a federal constitutional claim, [plaintiff]'s assertions that [the state judge] precluded her from presenting evidence and cross-examining witnesses and misapplied the law indirectly attack[ed] the custody determination adjudicated in state court"); *Parker v. Lehigh Cty. Dom. Rel. Ct.*, No. 13-6368, 2014 WL 11430961, at *1 (E.D. Pa. Apr. 15, 2014) (holding the court lacked jurisdiction pursuant to *Rooker-Feldman* to the extent plaintiff sought "damages for the child support order themselves"), *aff'd sub nom. Parker v. Lehigh Cty. Dom. Rel. Ct.*, 621 F. App'x 125 (3d Cir. 2015); *Tarapchak v. Schuylkill Cty.*, No. 13-1895, 2014 WL 4626701, at *3 (M.D. Pa. Sept. 15, 2014) (holding the *Rooker-Feldman* doctrine barred plaintiff's due process claim challenging her arrest and imprisonment as a direct result of a contempt order, issued for failing to comply with a support order). The Court also concludes Lyman's claim based on his lack of appointed counsel at the October 29, 2014, hearing is barred by the *Rooker-Feldman* doctrine because it is "inextricably intertwined" with the state court's finding of indirect civil contempt. *See United States ex. rel. Verdone v. Wisconsin*, Nos. 94-1821, 94-2106, 1995 WL 94914, at *3 (7th Cir. 1995) (holding plaintiff's constitutional claims stemming from state court custody proceedings, in which the state court found plaintiff in contempt, were inextricably intertwined with the state court proceedings); *Liedel v. Juvenile Ct. of Madison Cty.*, 891 F.2d 1542, 1544–

---

[8] Because orders for alimony are similarly ongoing in state court, *see* 23 Pa. Cons. Stat. § 3701(c), (e), and Lyman fails to distinguish between the child custody and alimony orders and payments in his pleadings, the Court treats Lyman's claims concerning alimony as identical to his claims concerning child custody.

45 (11th Cir. 1990) (holding plaintiff's claims that the state court deprived her of her right to counsel in child custody proceedings must be dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine, as plaintiff had the opportunity to raise her constitutional objections in state court). The Court therefore lacks jurisdiction over Lyman's claims pertaining to Judge Coyle's issuance of the enforcement and contempt orders, including the failure to appoint Lyman counsel, lift the injunction on his retirement account, and find beyond a reasonable doubt that he had the ability to comply with the enforcement orders before holding him in contempt.[9]

In addition, because Pennsylvania courts have ongoing oversight over child custody orders, *Younger* abstention prevents this Court from deciding Lyman's claims seeking injunctive and declaratory relief. In *Anthony v. Council*, a group of parents under child support orders issued by the Superior Court of New Jersey sued certain state court judges under § 1983, seeking declaratory and injunctive relief relating to the court's failure to inform them of their right to appointed counsel and failure to provide counsel. 316 F.3d at 416. The Third Circuit affirmed the district court's decision to abstain from deciding plaintiffs' claims, finding all three predicates to *Younger* abstention were satisfied. *Id.* at 418.

As to the first *Younger* predicate, the court found there were pending state proceedings because New Jersey law requires continual monitoring and enforcement of child support orders by the state courts, and any prospective relief granted to plaintiffs would "undeniably interfere" with those proceedings. *Id.* at 419-20. Next, the Third Circuit found the second *Younger* predicate satisfied, as the state had "an overriding interest in ordering, monitoring, enforcing and modifying child support obligations." *Id.* at 421. Finally, the appellate court found the plaintiffs

---

[9] Lyman's claims concerning various errors in docketing and mailing documents, however, are not the product of state court judgments, and therefore are not barred by the *Rooker-Feldman* doctrine. They are nevertheless barred, along with Lyman's other claims, for the reasons discussed *infra*.

10

had an adequate opportunity to raise their federal claims in the state court proceedings, noting paintiffs "offered no reason why their claims could not be fully heard" by the state courts, and, in fact, they had the opportunity to raise their claims during their child support hearings and to appeal adverse decisions through the state appellate system. *Id.* at 422 (citing 28 U.S.C. § 1257 and New Jersey law). Accordingly, the Third Circuit concluded the plaintiffs' "request for federal court intervention to prevent alleged future constitutional violations constitute[d] impermissible interference with pending state proceedings." *Id.* at 421.

Like the plaintiffs in *Anthony*, Lyman is "party to an open case that will not terminate until the child support order is finally discharged." *Id.* at 420; *see Nellom v. Del. Cty. Dom. Rels. Section*, 145 F. Supp. 3d 470, 479 (E.D. Pa. 2015) ("Pennsylvania law grants its courts authority over support actions or proceedings." (citing 23 Pa. Cons. Stat. § 4341(c))); *Mikhail*, 991 F. Supp. 2d at 623 ("Pennsylvania courts are not bound by previous custody orders."); 23 Pa. Cons. Stat. § 4352(a) ("The court making an order of support shall at all times maintain jurisdiction of the matter for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding the order."). As in *Anthony*, Lyman's request for prospective relief acknowledges that he may be subject to future ongoing custody proceedings. *See Anthony*, 316 F.3d at 421. Indeed, Lyman has indicated he has filed for permission to appeal his divorce decree *nunc pro tunc*. Lyman's claims also implicate important state interests concerning divorce and child custody matters. *See id.* at 422; *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."). And he has failed to allege he had inadequate opportunity to raise his federal claims in state court. *See Anthony*, 316 F.3d at 422 (noting the burden rests on the plaintiff "to show that state procedural law bar[s] presentation of [his] claims," and finding plaintiffs in that case had "offered no reason why their

claims could not be fully heard by [the state] courts"); *Mikhail*, 991 F. Supp. 2d at 629 ("There is no bar in custody proceedings to a parent's raising his federal constitutional rights."). In addition, there is no indication here "of bad faith, harassment or some other extraordinary circumstance, which might make abstention inappropriate." *Anthony*, 316 F.3d at 418.

Accordingly, the Court finds *Younger* abstention is appropriate to the extent Lyman's claims seek prospective relief with respect to ongoing state proceedings. *See Mikhail*, 991 F. Supp. 2d at 632 ("The *Younger* doctrine is as applicable to suits for declaratory relief as it is to the those for injunctive relief . . . ." (quoting *Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000))). With respect to Lyman's claim for damages, however, *Younger* abstention does not apply.[10] *See Mikhail*, 991 F. Supp. 2d at 629, 633 (holding plaintiff's claims for damages were not barred by *Younger*, as "*Younger* abstention is only appropriate where the precise claims raised in federal court are available in the ongoing state proceedings," and "it [was] quite likely that [the plaintiff] could not raise claims for damages" in the "state court sitting to address custody issues").

C. Eleventh Amendment

Defendants argue all of Lyman's claims against the DRD and his claims against Judge Murphy and Judge Coyle in their official capacities are barred by the Eleventh Amendment. Lyman appears to concede his claims against the DRD and his claims for damages are barred by

---

[10] It remains unclear whether *Younger* abstention can ever be applied to damages claims. *See Marran*, 376 F.3d at 154 (noting that while "[t]he Supreme Court has never explicitly decided whether *Younger* abstention covers actions for damages as well as equitable relief," the Court has indicated "abstention under *Younger* principles is not proper when damages are sought"); *see also Howard v. N.J. Div. of Youth & Family Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010) ("[A] district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings." (quoting *Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir. 1988))).

12

the Eleventh Amendment, but argues that pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), his claims for prospective relief against Judge Murphy and Judge Coyle in their official capacities are sound.

The Eleventh Amendment generally bars claims brought by individuals against states, and "arms of the State." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016); *see MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001) (noting the Eleventh Amendment makes "states generally immune from suit by private parties in federal court," and such immunity "extends to state agencies and departments"). The Eleventh Amendment bar against suits "in which the State or one of its agencies . . . is named as the defendant" applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted). Although such immunity may be abrogated by an Act of Congress or waived by the States, *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 195-96 (3d Cir. 2008), a state that has not consented to be sued is not considered to be a "person" within the meaning of § 1983, *see Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64 (1989).

In enacting § 1983, Congress did not abrogate the States' Eleventh Amendment immunity. *See id.* at 66 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). Pennsylvania also has not waived its immunity for alleged violations of § 1983. *See Green v. Dom. Rel. Section Ct. of Com. Pl. Compliance Unit Montgomery Cty.*, 649 F. App'x 178, 180 (3d Cir. 2016) ("Pennsylvania has not consented to suit in federal court." (citing 1 Pa. Cons. Stat. Ann. § 2310 and 42 Pa. Cons. Stat. Ann. § 8521(b))).

Pennsylvania's Eleventh Amendment immunity extends to its judicial districts, including all Commonwealth courts and agencies of the unified judicial system. *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("Pennsylvania's judicial districts . . . are entitled to Eleventh Amendment immunity."); *see also Callahan v. City of Phila.*, 207 F.3d 668, 672 (3d Cir. 2000) ("All courts and agencies of the unified judicial system, including the Philadelphia Municipal Court, are part of 'Commonwealth government' and thus are state rather than local agencies." (citing Pa. Const. art. V. § 6(c) and 42 Pa. Cons. Stat. Ann. §§ 102, 301)); *Parker v. Lehigh Cty. Dom. Rel. Ct.*, 621 F. App'x 125, 128 (3d Cir. 2015) ("As [Eleventh Amendment] immunity extends to the component districts of Pennsylvania's unified judicial system, it shields the Family Court from [plaintiff's] suit."). Further, because "all components of the judicial branch of the Pennsylvania government are state entities," those judicial entities "are not persons for [§] 1983 purposes." *Callahan*, 207 F.3d at 674. Accordingly, the DRD is a state entity entitled to Eleventh Amendment immunity from Lyman's § 1983 claims and is not a "person" within the meaning of § 1983. *See Green v. Dom. Rel. Section Ct. of Com. Pl. Compliance Unit Montgomery Cty.*, No. 15-0105, 2015 WL 1641391, at *4 (E.D. Pa. Apr. 9, 2015) ("Defendant Domestic Relations Section is a sub-unit of the Montgomery County Court of Common Pleas and, as such, is a part of the Commonwealth's unified judicial system." (citing 42 Pa. Cons. Stat. § 961)), *aff'd*, 649 F. App'x 178 (3d Cir. 2016). Lyman's claims against the DRD will therefore be dismissed with prejudice.

Lyman's claims against Judge Coyle and Judge Murphy for monetary damages are subject to the same analysis, insofar as the Judges are sued in their official capacity, as "suits against state officials in their official capacity should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). These claims will also be dismissed, as the judges are entitled

to Eleventh Amendment immunity, and are not considered "persons" within the meaning of § 1983. *See Will*, 491 U.S. at 71 (holding "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Tarapchak*, 2014 WL 4626701, at *3 (holding the Eleventh Amendment barred claims for monetary damages against Domestic Relations employees in their official capacity).

Pursuant to *Ex Parte Young*, however, a state official is a "person" for purposes of § 1983 where a plaintiff seeks only prospective relief. *Will*, 491 U.S at 71 n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." (internal quotation marks omitted)); *M.A. ex rel. E.S. v. State–Operated Sch. Dist. of Newark*, 344 F.3d 335, 344–45 (3d Cir. 2003) (noting the exception to Eleventh Amendment immunity for "suits against individual state officials for prospective relief to remedy an ongoing violation of federal law"). Accordingly, to the extent Lyman seeks prospective relief for actions taken by Judges Coyle and Murphy, those claims are not barred by the Eleventh Amendment.

### D. Judicial Immunity

Defendants also invoke judicial immunity as to the claims against Judges Coyle and Murphy in their individual capacities. "It is well-settled that a judicial officer in the performance of his or her duties has absolute immunity from suit for damages and will not be liable for his or her judicial acts." *Rush v. Wiseman*, No. 09-4385, 2010 WL 1705299, at *7 (E.D. Pa. Apr. 27, 2010) (citing *Azubuko v. Royal*, 443 F.3d 302 (3d Cir. 2006)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). A judge is therefore "absolutely immune from

liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). Judicial immunity is overcome only where the challenged actions were nonjudicial in nature, "i.e., actions not taken in the judge's judicial capacity," and where the actions, even if judicial in nature, were taken in the complete absence of jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (alteration omitted); *see Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).

The claims asserted against Judges Coyle and Murphy arise solely from their actions in adjudicating the divorce and custody proceedings; that is, in their capacity as judges of the Philadelphia Court of Common Pleas on matters within their jurisdiction.[11] Judge Coyle's alleged procedural errors do not render her actions non-judicial, and thus do not affect her immunity. *See Van Tassel v. Lawrence Cty. Domestic Relations Section*, 659 F. Supp. 2d 672, 697-98 (W.D. Pa. 2009) (holding state court judge entitled to judicial immunity even where plaintiff alleged judge committed procedural errors, in violation of the Pennsylvania Rules of Civil Procedure), *aff'd sub nom. Van Tassel v. Lawrence Cty. Dom. Rel. Sections*, 390 F. App'x 201 (3d Cir. 2010). Indeed, Lyman does not contest that the judges' actions were taken in their judicial capacity and within their jurisdiction. Lyman's claims against the Judges for monetary relief in their individual capacities are therefore barred by judicial immunity and will be dismissed. *See Parker*, 621 F. App'x at 125 (holding Eleventh Amendment and judicial

---

[11] As noted, Lyman makes no allegations pertaining to Judge Murphy's direct involvement in any of the alleged wrongdoing beyond arguing at the February 28, 2017, oral argument that Judge Murphy is an administrative judge who "funneled" the orders. This allegation is insufficient to adequately plead Judge Murphy's personal involvement in any of the alleged wrongdoing. Lyman's claim against Judge Murphy will be dismissed for this reason as well. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting a "defendant in a civil rights action must have personal involvement in the alleged wrongs," which many be "shown through allegations of personal direction or of actual knowledge and acquiescence . . . made with appropriate particularity").

immunity barred plaintiff's claims that family court judges "improperly failed to reduce his support obligations and arrearages in light of his unemployment").

### E. Declaratory and Injunctive Relief

Lyman's requests for declaratory and injunctive relief do not save his claims. He seeks (1) a declaration that Defendants' conduct violated his federal and state constitutional rights; (2) an injunction requiring Defendants to deliver "any information arising from the Orders complained of" to Lyman and delete such information from their records; and (3) an injunction preventing Defendants from engaging in future conduct that would violate Lyman's constitutional rights. Lyman is not entitled to such relief for several reasons.

First, a declaratory judgment may not solely declare a past violation of rights. *See Corliss v. O'Brien*, 200 F. App'x 80, 84-85 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct."); *O'Callaghan*, 661 F. App'x at 182 (noting a declaratory judgment "is meant to define the legal rights and obligations of the named parties in anticipation of future conduct, not to proclaim their liability for past actions"). Lyman's request for a declaration that Defendants' conduct violated his federal and state constitutional rights must therefore be denied.

Second, Lyman's claims for equitable relief against the judges are barred by the Federal Courts Improvement Act, which provides that "'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" *Azubuko*, 443 F.3d at 304 (quoting 42 U.S.C. § 1983) (ellipses in original); *see Rush*, 2010 WL 1705299, at *10 (noting judicial immunity bars suits for injunctive relief except in the "very limited circumstances" where "a declaratory decree was violated or declaratory relief was

17

unavailable" (citing *Azubuko*, 443 F.3d at 303-04)). Here, Lyman has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. His claims for injunctive relief are therefore barred. *See Azubuko*, 443 F.3d at 304; *Mikhail v. Kahn*, 572 F. App'x 68, 71 (3d Cir. 2014); *see also Van Tassel*, 659 F. Supp. 2d at 698 (finding injunctive relief barred by the FCIA and § 1983 where plaintiff brought claims against state judge in his judicial capacity and did not allege that a declaratory decree was violated or that declaratory relief was unavailable, and instead explicitly requested a form of declaratory relief in the complaint).

Finally, Lyman's request for a "mandatory injunction" compelling Defendants to collect, deliver, and delete any records relating to the state court orders is overbroad and vague. Further, the Court lacks jurisdiction to compel the state court to disclose documents to Lyman. *See Parker*, 621 F. App'x at 130 (citing *In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963)). In any event, Lyman has not sufficiently alleged irreparable injury or a threat of irreparable harm from the state court's holding of such records to warrant an injunction. *See Anderson v. Davila*, 125 F.3d 148, 163 (1997). Accordingly, Lyman's claims for declaratory and injunctive relief against Judges Coyle and Murphy will be dismissed with prejudice.

The Court finds amendment of Lyman's Complaint to cure the pleading deficiencies would be futile; therefore, the Complaint will be dismissed with prejudice. *See Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) (indicating leave to amend a complaint is unnecessary where amendment would be futile). An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.
